THE PENNSYLVANIA, DELAWARE and MARYLAND STEAM NAVIGATION COMPANY *vs.* THOMAS B. HUNGERFORD.— *December*, 1834.

A principal is responsible for the negligence or misconduct of his agents or servants, while acting in his employment; and any person who sustains an injury by such negligence or misconduct, may resort to the principal for indemnity and redress.

Where the slave of the plaintiff was carried on board a steam boat of the defendant, an incorporated company, and the captain of the boat, on the eve of its departure, informed of the slave being on board, told the plaintiff's agent to search for her, but made no search for her himself, and the

slave was in fact carried off in the boat, and lost to the plaintiff; the court would not permit the jury to consider whether the agents of the defendant were guilty of misconduct or negligence in permitting the escape of the negro, and HELD, that it was the duty of the master of the boat to have made such a search as would have prevented the escape of the slave, and not doing this, the owners of the boat were responsible.

APPEAL from *Baltimore* county court.

This was an action on the case brought by the appellee against the appellants, on the 14th of April, 1832, to recover damages of them for carrying in their steam boat, out of the State, the slave of the plaintiff, whereby she was lost.

Issue was joined upon the plea of not guilty.

1. The plaintiff proved at the trial by *William E. Hungerford*, that in 1819, he purchased negro *Henny* (the slave in question) of *Richard Batturs* for $250. That afterwards he conveyed her to his brother, the plaintiff, who gave him liberty to use her free of all wages, until he should be married, and that the negro was in the possession of witness, under directions to be returned to his brother, at the time she was carried away from *Baltimore.* That on the 18th of March, 1828, a young gentleman came to the house of witness to inquire about this negro, and on the following morning a carriage came to his door, and drove off with her. That witness pursued, and saw her go on board the steam boat, and went down, and told captain *Pearce* of that steam boat, that he suspected she was on board. That *Pearce* then told witness to search for her every where but in the ladies' cabin, which witness did, but could not find her, and having stated this to the captain, he promised witness, if she was on board to bring her back from *Frenchtown.* That the negro was carried to *Philadelphia*, and has never been returned. That when the steam boat returned, the witness saw captain *Pearce*, who informed him the slave was on board, and claimed by *Batturs* and his daughter at *Frenchtown.* That *Batturs* paid her passage and took her on. That she was a valuable house servant, worth $250.

The defendant then proved by captain *Pearce*, that on

said *Hungerford's* representing to him that said negro was on board, which was from five to eight minutes before the boat left the wharf, he pointed to a police officer, and directed him, *Hungerford*, to go and take the officer and search all parts of the boat for the negro. That *Hungerford* did not take the officer, as far as he recollects. That witness did not prohibit *Hungerford* from searching any part of the boat. That officers are always placed on board these boats before their departure, to prevent runaways from escaping. That when the steam boat reached the canal, the witness saw a negro woman with *Mr. Batturs*, for whom *Mr. Batturs* paid as his servant; and in answer to captain *Pearce's* inquiries, represented, that she was his, *Batturs'*, servant. That *Batturs* and *Hungerford* were both strangers to him. The plaintiff further proved, that the steam boat, of which *Pearce* was the commander, and in which the plaintiff's slave was carried out of the State of *Maryland*, was the property of the defendants.

Upon this proof, the defendants prayed the court to instruct the jury, that if they believed, that neither the defendants, nor their servants, or agents, were guilty of any misconduct or negligence, in permitting the escape of said negro, claimed by the plaintiff, that the plaintiff is not entitled to recover. But the court (PURVIANCE, A. J.) refused to give the instruction; and the verdict and judgment being for the plaintiff, the defendants prosecuted an appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, DORSEY, and CHAMBERS, J.

*Johnson*, for the appellants.

The argument of the counsel of the appellees, assumes what the evidence in the case does not justify, that the captain or the agent of the defendants, had *actual knowledge* that the slave in controversy was on board his boat, on the morning of the 19th March, 1828.

The testimony of the witness from the appellee was, that he informed the captain that he *suspected* she was on board, *not* that he *knew* her to be there.   This was a very few minutes before the boat's time for starting, and just as she was on the eve of leaving the wharf.   The captain's evidence is, that he gave the witness referred to, unlimited permission to search the boat in every direction, and requested him to take a police officer, then on board, to aid in the search. The search proving unavailing, the boat left the wharf, and the captain was justified, *from the fact that the search so made was unavailing,* in inferring that the *suspicions* of the witness were unfounded.   After arriving at the other end of the route, only *one* black person was found on board, and she was represented by the gentleman and lady with whom she was apparently travelling, to be their servant, and *paid* for accordingly.   Under the circumstances, had the captain not a right to suppose that this was the fact, or would he have been authorised to have detained the woman, and her alleged owners, until he could send to *Baltimore,* or return to *Baltimore,* and find out the witness of appellee, who was entirely unknown to him, and submit to him the question of ownership?

It may be conceded, that color alone is *prima facie* evidence of slavery, without its affecting the question in the present case.   The inquiry is not whether the woman was actually or constructively to the knowledge of the captain a slave, but whether she was the slave of the plaintiff, or rather of any one else than the alleged owners, in whose charge she was travelling.   It would be attended with great practical inconvenience to masters, or with great injustice to carriers of this description, if they could never transport a slave apparently travelling with its owner, except at the hazard of liability to the true owner, should he be other than the apparent owner.

Where a slave is found on board a steam boat without a claimant, and an unsuspected one, it may be admitted, and policy requires that the rule should be so, that the compa-

ny are responsible to the true owner for his value, should the slave be lost. But it is submitted that, in a case like the present, it would be as unjust as it would be impolitic, to hold the company to such a liability. The court are referred to the following acts of assembly, which are believed to be all that can in any degree relate to this case. Take them altogether, and consider the whole as constituting a system, it is submitted that knowledge either actual or *implied*, is required to render the carrier responsible. April, 1715, *ch.* 19, *sec.* 5. *Ib.* 1715, *ch.* 44, *sec.* 4. *Ib.* 1744, *ch.* 19. 1753, *ch.* 9, *sec.* 2. 1805, *ch.* 96. 1817, *ch.* 112, *sec.* 6.

*Gill*, for the appellee.

This is an action on the case brought against the Navigation Company, to recover the value of a negro slave, carried off from *Baltimore* to *Frenchtown* and *Philadelphia*, in the steam boat of the appellants, and thus lost.

The case presented by the proof is, that the defendants after notice to their agent, the captain of one of their steam boats, carried off the slave of the plaintiff in their boat from *Baltimore* to *Frenchtown*, and that the slave was lost. The knowledge or notice of the fact that the negro was on board the boat, is admitted by the witnesses on both sides.

In this state of the case, the defendant prayed the county court to instruct the jury, that if they believed neither the defendant, nor their agents were guilty of any misconduct or negligence, in permitting the escape of the negro claimed by the plaintiff, the plaintiff cannot recover. This was refused, and it is from this, the appeal was taken.

The form of the prayer admits the escape of the negro, and that too in the defendants' boat. But it insists, that whether the defendants were guilty of negligence was a question for the jury; that is, if the defendants adopted proper measures to prevent the escape of the negro they were not responsible. The proof does not show that the defendants' agents adopted any measures on this occasion;

informed of the fact, they made no special search, he, (the captain) merely gave the plaintiff's agent an opportunity of searching for the negro. The defendant's own proof shows they were guilty of negligence. Informed of the fact, that the property of the plaintiff was on board of the boat, they carry it off, and this is negligence and misconduct.

This court has decided, that if a party knowingly takes off the apprentice of another, he is responsible in damages; that if, when he received the apprentice, he did not know the fact, yet coming to the knowledge of it afterwards, and then retaining or carrying off the apprentice, he is responsible. *Fergusson vs. Tucker*, 2 *Harr. and Gill.* 82. Now upon the last proposition, even if this was for carrying off an apprentice, the appellant could not have put his defence upon the fact of his negligence; for negligent or not, knowing the fact that the slave was on board, and not putting her ashore at *Baltimore*, he is responsible to the plaintiff. Considering a slave as property, personal property, there can be no doubt, that for the agents taking off the property of the plaintiffs in the steam boat after notice, the owners would be responsible.

Where a slave, the property of the plaintiff, was carried from *New Jersey* to *New York* in the defendant's ferry boat, without the consent or permission of the plaintiff expressly given, the slave not returning, the defendant was held responsible for his value. *Gibbons vs. Moore*, 2 *Halsted's Rep.* 262. The second point decided in this case (p 263) shows that the acts and orders of defendants to prevent the escape of slaves, will not avail the defendants.

And this corporation is responsible for the acts of its agents. See *Angel on Corporations*, and cases there cited.

The act of 1715, *ch.* 19, *sec.* 5, gives an action for transporting any slave out of the province, and all negroes being prima facie slaves, the person transporting, carries them off at his peril.

Under the circumstances, it is contended to be entirely unimportant, whether the jury believed the defendant was guilty of negligence or not.

1. Their authorised agent had notice that the negro was on board.

2. Even if no notice existed, all persons trade with, or carry off negroes at their peril; their color demonstrates them to be slaves, and this puts all parties dealing with them upon inquiry.

STEPHEN, J., delivered the opinion of the court.

The rule of law is well established, that the principal is responsible for the negligence or misconduct of his agents or servants, while acting in his employment; and that any person who sustains an injury by such negligence or misconduct, may resort to the principal for indemnity and redress. We think when the witness of the plaintiff represented to the captain that he had reason to believe, that the slave of the plaintiff was on board his boat, it was a duty legally incumbent upon him to have made, or cause to be made, such a search as would have prevented the escape of the slave from the service of her owner; and that if he failed in the performance of this duty, he was legally responsible for the consequences.  The information he received was sufficient to have put him upon inquiry, and if he failed to make the necessary examination he acted at his peril, and his employers are responsible in point of law, for the loss which the master has sustained in consequence of that omission. Having failed to perform this legal duty, in consequence of which the slave was enabled to make her escape from the service of her master, we think that the company are responsible to him in damages, and that the court below were right in refusing to grant the prayer of the defendant.  The facts given in evidence, if believed by the jury, were sufficient to establish a legal liability on the part of the company, and the court were right in refusing to submit such liability to their decision, upon the ground of negligence or miscon-

duct, as stated in the defendant's prayer; as the granting of such direction might have had the effect of misleading them in the formation of their verdict. It is the peculiar province of the jury, to find from the evidence the truth of facts, and it is the duty of the court to declare the law arising upon the facts, when so found by them.

The court we think were therefore right in refusing to give the instruction as prayed.

JUDGMENT AFFIRMED.