# Auguste Ewalt and James Myers *vs.* Luther O. Harding and Wm. Hopkins.

The plaintiff, the consignee of the larger parcel in a mixed cargo of wheat,

sold the *whole* on the 13th, and settled with the defendant, the consignee of the smaller parcel, on the 18th of October, though he had not then received the money from the purchaser. The name of the purchaser was not disclosed to the defendant until the 24th or 25th of the same month, when the plaintiff demanded of the defendant a return of the money, stating that the purchaser had failed and an unsuccessful attempt had been made to attach the wheat in New York. It was proved that sales of grain in Baltimore are made *for cash* on delivery, though the money is not always paid at the time, some delay being incident to delivery, but still that the delivery does not bar the right to demand *cash.* HELD:

That the plaintiff was not entitled to recover, because he had not exercised proper care and diligence in collecting the proceeds of sale.

Whether due diligence has been observed is a question to be decided by *the court on facts* to be found by the jury, and a prayer which leaves it to *the jury* to find whether due diligence has been observed, is erroneous.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit*, for money had and received, brought on the 25th of November 1856, by the appellees against the appellants. Plea *non assumpsit.*

*Exception.* The plaintiffs and defendants were commission merchants, trading, the former under the firm of "Harding & Hopkins," and the latter of "James Myers & Co." In October 1856, a lot of wheat was consigned to the plaintiffs for sale, and on board the same vessel was also a lot consigned, by Col. Taylor, of Virginia, to the defendants for the same purpose, that consigned to the plaintiffs being the larger lot. On the 13th of October 1856, the plaintiffs sold both lots to one Ballard *for cash.* On the 18th of October Ewalt, one of the defendants, called at the counting-room of the plaintiffs, and asked for the proceeds of Taylor's wheat, to which Harding, one of the plaintiffs, answered, that he had not received the money for it, but that they had the money and might as well pay, and gave him a check for $594.87, without deducting any commissions, and Taylor's account, with the defendants, was immediately credited with the proceeds, a part being applied to a note due by him and held by them, and the balance remitted to him by the defendants

on the 24th of October. Ballard's name was not mentioned in this conversation as the purchaser of the wheat. On the 24th or 25th of October, Harding came to the defendants' store, and for the first time stated the wheat had been sold to Ballard and that Ballard had failed. Harding also then stated that he had been on to New York and tried to attach the wheat, but had not succeeded. Harding then requested the defendants to return him the amount of the check, which they declined, on the ground that they did not know the wheat had been sold to Ballard, that they had already credited Taylor with the proceeds, and that, under the circumstances, the loss ought to fall upon the plaintiffs.

The proof further shows that sales of grain in Baltimore are made for cash on delivery, but that often several days elapse between the delivery and payment, but the seller has the right to demand the cash on delivery, and this right is not waived by delivery. One witness stated he has waited a week as a favor; another that he has known cases where there has been delay, but they are exceptions, that the rule is to pay cash on delivery, but he has had to wait fourteen days; and another that some delay is incident to delivery and payment, and that he has known twenty days to elapse.

The plaintiffs also offered testimony to show that it is a general custom among merchants in Baltimore, that where two or more lots of grain are consigned to different commission merchants in the same vessel, the one to whom the largest lot is consigned sells the whole, has no dealings with the consignors of the smaller lots, but sells the same at the risk of the merchant to whom it is consigned, and accounts to him for the full amount of sales, and receives no commissions. Some of the witnesses state that there are exceptions to this custom; others, that it is not exactly fixed, but is allowed as a matter of courtesy and dispatch; others, that there is no such general, uniform and fixed custom, though sales are sometimes permitted to be made by the larger consignees, as matters of courtesy.

The witnesses on the part of the plaintiffs also prove that at the time of this sale Ballard's credit was good, that he

made purchases of large quantities of wheat from the plaintiffs and others, just prior to that date, all of which was lost by his failure. The witnesses for the defendants proved that Ballard's credit was not good in October 1856, and had not been for some months before, and that they would not have trusted him.

On this evidence, the court, (LEE, J.,) after rejecting the prayers offered on both sides, instructed the jury, that if they find the facts offered in evidence, and shall, from all the evidence in this cause, find that the plaintiffs sold the wheat in question, in good faith, and exercised, in all respects such diligence and caution in said sale and in collecting the proceeds thereof, as a prudent merchant or agent should exercise; and shall further find that the usage spoken of by the witnesses, as to sales by one consignee for and on behalf of another consignee, was known to the defendants at the time, and that the plaintiffs, under such a sale, (so known to the defendants,) acted as their agents in the sale of this wheat, with the knowledge or consent of the defendants, and that the commissions for the sale of the same were received by the defendants, then the plaintiffs are entitled to recover. To the granting of this instruction the defendants excepted, and the verdict and judgment being against them appealed.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*John P. Poe*, for the appellants:

The instruction granted by the court below was clearly erroneous, because it withheld from the jury the consideration of every question in the case, except that of good faith and due diligence on the part of the plaintiffs in the sale of the wheat and the collection of the proceeds. Such an instruction it is not competent for *the court, unasked,* to give. We deny that *the court* has a right to *volunteer* its instructions to the jury upon any thing but the whole case, or at least the points raised by counsel, and a volunteer instruction will be held vicious, unless it appears by it, "full and substantial

justice has been done to the party and the law of the case has been accurately declared, and in terms explicit and intelligible to the jury upon the points raised by counsel." 6 *G. & J.*, 404, *Hall vs. Hall.* 2 *Md. Rep.*, 63, *Keener vs. Harrod & Brooke.* 5 *Md. Rep.*, 121, *Coates & Glenn vs. Sangston.* 7 *Gill*, 233, *Beall vs. Beall.* Were then the questions excluded from the jury by this voluntary instruction of the court, material to a proper decision of the case? Those questions were:

1st. Whether the plaintiffs had been guilty of any default in not apprising the defendants of the name of the purchaser or of his failure ?

2nd. Whether the payment, by the plaintiffs to the defendants, was an absolute payment by which, in law, they became responsible for the debt ?

3rd. Whether the demand for the refunding of the amount paid was not too late, the defendants having already applied it according to the directions of their principal ?

1st. The plaintiffs' case is based entirely upon a custom alleged to exist in the city of Baltimore, that the consignee of the larger portion of a cargo shall sell the whole, and account with the consignee of the smaller for his share. The existence of such a custom as the law requires—a custom, general, fixed, uniform—is clearly not proved in this case, most of the witnesses stating that sales in such cases were allowed rather as matters of courtesy than of right sanctioned by long usage. But conceding that the jury, by their verdict, found that the custom was known to the parties, and, in fact, entered into this transaction, yet, inasmuch, as it is a usage unwise, contrary to sound policy, and even dangerous, it ought to be confined within as narrow a compass as possible—it ought to be strictly followed. In this case it was deviated from. The name of the purchaser was not disclosed though the plaintiffs' own witnesses prove that such was the usual practice. They were, therefore, in default, the consequences of which were fatal; for it is hazarding nothing to say that had the defendants known that Ballard was the purchaser, their grain would not have been delivered to him and

the loss would not have occurred. It was clear error, therefore, for the court to exclude this material question from the jury.

2nd. Was the payment to the defendants an absolute payment? That the plaintiffs *at first intended* it as such is manifest. The remark of Harding at the time he gave the money to Ewalt, the failure to disclose the name of the purchaser, though it was the practice to disclose his name, and their attempts to recover the wheat by attachment in New York, abundantly prove it. But independently of this, the law in such cases is too well settled to be successfully controverted. It is universally held that where, after the sale, the factor, without mentioning to whom he has sold, or what security he has taken, remits a promissory note, or bill of exchange, (*a fortiori* when he pays the cash,) for the net proceeds, this naturally seems to close the transaction and completely lulls the suspicion of the principal. He has the best ground for supposing that the factor had *actually been paid,* or is content to take upon himself the responsibility of the purchase. It is an assumption of the debt by the factor, and the payment having been voluntary with a full knowledge of all the facts, he is precluded from recovering it. 3 *Camp.,* 291, *Simpson vs. Swan.* 2 *Camp.,* 546, *Jameson vs. Swainstone.* 5 *Taunt.,* 749, *Le Fevre vs. Lloyd. Story on Cont., sec.* 366. *Story on Agency, sec.* 342. *Dunlap's Paley's Agency,* 43. 3 *Johns. Ch. Rep.,* 600, *Consequa vs. Fanning.* 4 *Cowen,* 250, *Oakley vs. Crenshaw.* 4 *Rawle,* 223, *Harvey vs. Turner.* 4 *Zabrisbie,* 96, *Steward vs. Scudder.* 24 *Verm.,* 611, *Jackson vs. Bissonette.* Whether it be, therefore, a conclusion of law, that a payment under such circumstances as are disclosed by the record in this case, is absolute, or whether the nature of the payment is a question of intention to be decided by the jury upon the whole evidence, the instruction of the court withholding this question from the jury is clearly vicious and ought to be corrected.

3rd. Was the demand to refund in season? Conceding, for the sake of the argument, that money paid, as that sought to be recovered in this case, could be recovered whilst in the

hands of the party receiving it, the further inquiry presents itself, at the time of the demand was it in the power of the defendants to return it, or had they applied it according to the instructions of their principal? If they had, there is an end of the case; for the parties could not then be restored to their original rights. 4 *Sandford*, 366, *Martin vs. McCormick.* 14 *Georgia*, 89, *McDonald vs. Napier.* 1 *Wend.*, 173, *Mowatt vs. McClelan.* 7 *Cowen*, 460, *La Farge vs. Kneeland.* That they had done so appears by every reasonable view of the evidence; but whether they had or not, surely a proposition of so important and conclusive a character ought to have been submitted to the jury. If the evidence was conflicting they alone had the right to pass upon it; if uncontradicted, even the court could not assume any fact as proved, for the jury are the sole judges of the credibility of witnesses. The principle which would throw the loss in this case upon the plaintiffs, and not the defendants, if the money had actually been applied by the defendants before the demand to refund, is the familiar one, that where one of two innocent parties must suffer, he ought to suffer through whose negligence, default or instrumentality the loss was occasioned. *Story on Agency*, secs. 320, 321. 1 *Parson's on Cont.*, 56, 57. Here the plaintiffs, by their voluntary and deliberate act, induce the defendants to pay over to their principal the amount due him, and thus put it out of their power to call upon their principal for repayment. In other words, the defendants are placed in a more unfavorable attitude than the plaintiffs, by the plaintiffs' own act. 4 *Zabrisbie*, 96, *Steward vs. Scudder.* The defendants could certainly not recover from their principal, for they had remitted to him the proceeds of his wheat and closed the transaction; nor could they successfully resist an action by him against them for the proceeds of the wheat on the ground of their not having received the money, even if they had not actually paid them over, for they had credited him on their books, sent him an account of sales, which he had received and acted upon, and they would be estopped from denying that they had received the

purchase money. 3 *Camp.*, 291, *Simpson vs. Swan,* and other authorities under the second point.

4th. But conceding the court had a right to shut out these three questions from the jury, on the ground of their immateriality, yet still the instruction, as given, is itself vicious, because it submits to the jury the question of due diligence, which in this case is a question not of *fact* but of *law.* 6 *Md. Rep* , 37, *Foley & Woodside vs. Mason.* 7 *Gill,* 231, *Bell vs. Hagerstown Bank.* 6 *G. & J.*, 291, *Steam Nav. Co. vs. Hungerford.* 4 *Zabriskie,* 96, *Steward vs. Scudder.*

The instruction of the court, and its refusal to grant the defendants' prayers, appears to be clearly erroneous for the reasons heretofore assigned, and should be reversed; and as it must be quite manifest that the jury were induced by that instruction to render a verdict which violates every principle of equity, and that upon the admitted facts, without reference to those controverted, the plaintiffs have no just claim to recover, the ends of justice will be furthered by a refusal to send the case back under a *procedendo.*

*Wm. S. Waters,* for the appellees:

The main question in the case is the propriety of the instruction granted by the court. The *bona fides* and proper diligence of the appellees, the existence of the custom, and the knowledge of it by the appellants, the due conformity to it by the appellees, the agency of the appellees according to the custom, and their acting with the knowledge and consent of the appellants, and without compensation, are all expressly submitted by the instruction to the jury. All other facts stated in the bill of exceptions, by the general terms of the instruction, were submitted to the jury. The question is, then, whether, upon these facts, the plaintiffs were in law entitled to recover? The facts having all been found by the jury, the question is a legal one. 3 *G. & J.*, 450, *Bosley vs. Ches. Ins. Co.* In this case, the appellants were the principals of the appellees, and the ordinary duties and responsibilities existing between principal and agent subsisted

between them, and were not modified by the fact that the appellants had another principal. *Dunlap's Paley's Agency,* 49, and *notes.* 6 *Taunt.,* 147, *Schmaling vs. Thomlinson.* A payment, by agent to principal, of money on account of goods sold by virtue of that relation, before the money for the sale is collected, is *prima facie,* an advance, and can be recovered back, if the buyer of the goods fails before payment. 4 *Metcalf,* 576, *Hapgood, et al., vs. Batcheller, et al.* 1 *Rawle,* 126, *Elliott vs. Walker.* 1 *Amer. Lead. Cases,* 483. 5 *H. & J.,* 306, *Ferris vs. Walsh.* The exceptions are:

1st. When the agent makes the debt his own by depriving the principal of all legal remedy for its recovery. 1 *Amer. Lead. Cases,* 480.

2nd. When the agent represents to the principal (by means of rendering him an account, paying the balance over, or otherwise) that the debt has been collected, and by that means lulls the suspicion of the principal, and prevents him from taking active measures to secure himself, and damage has accrued thereby.

Both these exceptions are sometimes based upon the consideration of an assumption of the debt by the agent. 4 *Cowen,* 252, *Oakley vs. Crenshaw.* 5 *Cowen,* 473, *Robertson vs. Livingston.* 1 *Amer. Lead. Cases,* 481, 482. The last exception, however, is more frequently based upon the consideration, that it would be unjust to receive a payment under such circumstances as an advance. The injustice consists in the false impression made upon the principal. No such impression could, however, be made in this case, as the principal was distinctly informed that the money had not been collected. 5 *Taunt.,* 749, *Le Fevre vs. Lloyd.* 7 *Taunt.,* 159, *Goupy vs. Harden.* 4 *Barn. & Cress.,* 715, *Shaw vs. Picton.* 1 *Rawle,* 126, *Elliott vs. Walker.* 2 *Camp.,* 546, *Jameson vs. Swanistone.* 1 *Amer. Lead. Cases,* 481. 4 *Metcalf,* 576, *Hapgood, et al., vs. Batcheller, et al.* Conceding that the appellants had been falsely impressed by the conduct of the appellees, there is no proof that in this case any damage had accrued to them before this demand for the return of the money. 7 *H. & J.,* 36, *Davis vs. Davis.*

1 *Gill*, 142, *Whiteford vs. Burckmyer & Adams.* The appellees were voluntary agents, and the jury have found that they discharged all the duties incumbent upon them by that relation. 1 *Parsons on Cont.*, 372. There was no consideration for the assumption of the debt due by Ballard. 4 *Metcalf*, 576, *Hapgood, et al., vs. Batcheller, et al.* It is incumbent upon the principal to indemnify the agent for all loss, more especially a voluntary agent who has done his duty. 1 *Rawle*, 126, *Elliott vs. Walker.*

TUCK, J., delivered the opinion of this court.

In deciding the present appeal, we need not pronounce upon the custom in Baltimore, which, it is said, entitles the consignee of the larger parcel of grain, in a mixed cargo, to sell the whole, and account to the consignees of the smaller lots for the purchase money of their consignments, because, as we think, the merits of the controversy depend on a question not affected by such alleged custom.

It appears that the plaintiffs below, sold the grain, on the 13th of October 1856, to one Ballard, who was not known to the defendants, as the purchaser, and that they settled with them on the 18th, although the money had not been received. On the 24th or 25th of the month, one of the plaintiffs called on the defendants, and demanded a return of the money, stating that Ballard had failed, and that an unsuccessful attempt had been made to attach the wheat in New York. This appears to have been the first information the defendants had of the name of the purchaser.

It is contended, on the part of the appellees, that they acted as agents of the appellants, and that having settled with them before the purchase money for the wheat had been collected from Ballard, that payment was an advance, which may be recovered back on failure of the vendee. But in this, as in other cases, the agent must act *bona fide*, and with due care and diligence, and if the record shows that such was not the case, it would be unjust to cast the loss on the appellants.

22    v.16

We may here remark that we are dealing with a case between commission merchants, and not with rights and duties, as between commission merchants and their principals.

The proof shows that sales of grain in Baltimore are made for cash on delivery, but that the money is not always paid at the time, some delay being incident to delivery; but still the delivery does not bar the right to demand cash.   One witness stated he had waited for the money as long as a week, as a favor; another had known twenty days to elapse.   These appear to have been special cases.   Here the appellants did not disclose the name of the purchaser until after the grain had been carried away, and all prospect of recovery gone.   Instead of taking the cash, they waited from the 13th until after the 18th, because we find them pursuing the wheat to New York, between the 18th and 24th, without success.   If this be deemed proper care and diligence, we are at a loss to imagine what would be considered negligence.   There was consequently no evidence from which the jury could find that these appellees "exercised, in all respects, such diligence and caution in said sale and in collecting the proceeds thereof, as a prudent merchant or agent should exercise."

But, apart from this, the court erred' in submitting that question to the jury at all, it being well settled, that whether due diligence has been observed, is a question to be decided by the court, on facts to be found by the jury.   *Boyer vs. Turner,* 3 *H. & J.,* 285.   6 *G. & J.,* 291.   1 *H. & J.,* 477.   6 *G. & J.,* 63.   The judgment must, therefore, be reversed, and, being of opinion that the plaintiffs are not entitled to recover, for want of diligence in collecting the proceeds of sale, a *procedendo* will not be ordered.

*Judgment reversed and no procedendo.*

(Decided June 15th, 1860.)